**RECORD NO. 26-1724**

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

FEINGOLD MORGAN SANCHEZ LLC; FEINGOLD LLC; DAVID FEINGOLD

*Plaintiffs-Appellants*,

v.

INTERNAL REVENUE SERVICE; UNITED STATES DEPARTMENT OF THE TREASURY; UNITED STATES OF AMERICA

*Defendants-Appellees*,

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

**OPENING BRIEF OF APPELLANTS**

GALLIVAN, WHITE & BOYD, P.A.

John T. Lay, Jr.
1201 Main Street, Suite 1200 (29201)
Post Office Box 7368
Columbia, South Carolina 29202
(803) 779-1833
jlay@gwblawfirm.com

Ioannis (Ian) G. Conits
55 Beattie Place, Suite 1200
Post Office Box 10589
Greenville, South Carolina 29201
(864) 271-9580
iconits@gwblawfirm.com

Lindsay A. Joyner
40 Calhoun Street, Suite 315 (29401)
Post Office Box 22768
Charleston, South Carolina 29413
(803) 799-1833
ljoyner@gwblawfirm.com

*Counsel for Appellants Feingold Morgan Sanchez LLC, Feingold LLC, and David Feingold*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iii

JURISDICTIONAL STATEMENT .......... 1

STATEMENT OF THE ISSUES .......... 2

STATEMENT OF THE CASE .......... 2

I. Supreme Court's *Jarkesy* Decision .......... 3

II. The Government's Unconstitutional Notices to Appellants .......... 5

SUMMARY OF THE ARGUMENT .......... 7

STANDARD OF REVIEW .......... 8

ARGUMENT .......... 8

I. The District Court erred in concluding that granting the relief requested by Appellants in their Expedited Motion for Preliminary Injunction, which sought to enjoin the Government from pursuing the Unconstitutional Notices, would violate the Anti-Injunction Act, 26 U.S.C. § 7421(a) .......... 8

II. The District Court erred in denying Appellants' Expedited Motion for Preliminary Injunction that sought to enjoin the Government from pursuing the Unconstitutional Notices .......... 13

A. Appellants are likely to succeed on the merits .......... 13

a. *Jarkesy* provides that the Government's refusal to provide a jury trial for fraud claims against Appellants is unconstitutional .......... 13

1. The Government's Unconstitutional Notices implicate and violate the Seventh Amendment .......... 14

2. The public rights exception does not apply. .......... 19

b. *Jarkesy*'s progeny supports Appellants' position that they are entitled to a jury trial on the Government's allegations of fraud ........................................................................20

c. Appellants did not waive their Seventh Amendment right to a jury trial by filing in the only forum the Government provided to them.........................................................................24

1. The "option" of a juryless Tax Court is unconstitutional ........................................................................26

2. The "option" of a post-payment refund suit is an inadequate remedy ........................................................27

d. Venue is proper in South Carolina ....................................28

e. There is a constitutional right to a jury trial in suits against the sovereign ......................................................................31

B. Appellants will suffer and have suffered irreparable harm ........33

C. The remaining factors warrant injunctive relief... ......................34

CONCLUSION ........................................................................................35

STATEMENT REGARDING ORAL ARGUMENT.............................................35

CERTIFICATE OF SERVICE ......................................................................37

CERTIFICATE OF COMPLIANCE ...............................................................38

DISCLOSURE STATEMENTS...................................................................... 39

# TABLE OF AUTHORITIES

## Cases

*Aetna Ins. Co. v. Kennedy to Use of Bogash,*
301 U.S. 389, 393 (1937) ......................................................................24

*Amador v. Mnuchin*,
476 F.Supp.3d 125, 143 (D. Md. 2020)................................................ 27-28

*Arizona Dream Act Coal. v. Brewer*,
757 F.3d 1053, 1069 (9th Cir. 2014)..........................................................35

*Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n,*
430 U.S. 442, 97 S. Ct. 1261, 51 L.Ed.2d 464 (1977) .................................19

*Axon Enterprise, Inc. v. Fed. Trade Comm'n,*
598 U.S. 175, 192 (2023) ........................................................ 26, 28, 33-34

*Bd. Of Trs. v. Sullivant Ave. Props., LLC*,
508 F. Supp. 2d 473, 477 (E.D. Va. 2007)...................................................29

*Burgess v. Fed. Deposit Ins. Corp.*, 639 F. Supp. 3d 732, 749 (N.D. Tex. 2022),
*rev'd and remanded on other grounds sub nom. Burgess v. Whang*,
152 F.4th 579 (5th Cir. 2025)........................................................................33

*Collins v. Straight, Inc.*,
748 F.2d 916, 921 (4th Cir. 1984)................................................................29

*CIC Services, LLC v. IRS,*
593 U.S. 209, 223 (2021) ........................................................................ 10-12

*C.G.B. v. Wolf,*
464 F. Supp. 3d 174, 217 (D.D.C. 2020)............................................... 33-34

*Compare N. Donald LA Prop., LLC v. Comm'r of Internal Revenue,*
T.C.M. (RIA) 2026-019 (T.C. 2026) .........................................................18

*Costa v. Bazron*,
456 F. Supp. 3d 126, 137 (D.D.C. 2020)....................................................34

*Dewhurst v. Century Aluminum Co.*,
649 F.3d 287, 290 (4th Cir. 2011) ........................................................2, 8

*Dimick v. Schiedt*,
293 U.S. 474, 486 (1935) ........................................................22, 15

*Elrod v. Burns*,
427 U.S. 347, 373 (1976) ........................................................ 33-34

*FCC v. AT&T, Inc.*,
146 S. Ct. 1418, 1431 (2026)........................................................24, 26

*Fusaro v. Cogan*,
930 F.3d 241, 248 (4th Cir. 2019)........................................................8

*Gagliardi v. United States*,
81 Fed. Cl. 772, 777, *dismissed*, 315 F. App'x 247 (Fed. Cir. 2008)...... 17-18

*Galloway v. United States*,
319 U.S. 372, 387-89 (1943) ........................................................ 31-33

*Green v. Smith*,
No. 7:23-cv-03088-JDA, 2023 WL 5960354 (D.S.C. Sept. 13, 2023) .........30

*Hodges v. Easton*,
106 U.S. 408, 412 (1882) ........................................................15

*Leaders of a Beautiful Struggle v. Baltimore Police Dep't*,
2 F.4th 330, 339 (4th Cir. 2021)........................................................13

*Lehman v. Nakshian*,
453 U.S. 156, 160 (1981) ........................................................ 31-33

*Little v. Gray Media Grp., Inc.*,
717 F.Supp.3d 1058, 1061 (D. Kan. 2024)...............................................24

*McElrath v. United States*,
102 U.S. 426 (1880)........................................................33

*Mitrano v. Hawes*,
377 F.3d 402, 405 (4th Cir. 2004)............................................................29

*Nat'l Lab. Rels. Bd. v. Starbucks Corp.*,
159 F.4th 455, 474 (6th Cir. 2025) ...........................................................18

*Nken v. Holder*,
556 U.S. 418, 435 (2009) ..........................................................................34

*Norcave Properties LLC v. IRS*,
No. 2:25-CV-00398, 2025 WL 2463809 (W.D. La. Aug. 25, 2025),
*appeal docketed*, No. 25-30542 (5th Cir. Sep. 26, 2025)....................... 11-12

*Osborn v. Univ. Med. Assocs. of Med. Univ. of S.C.*,
278 F. Supp. 2d 720, 732 (D.S.C. 2003).....................................................18

*Pernell v. Southall Realty*,
416 U.S. 363, 375 (1974) ..........................................................................33

*Ross v. Bernhard*,
396 U.S. 531, 538, 541 n.15 (1970) ..........................................................32

*Scholl v. Mnuchin*,
494 F.Supp.3d 661, 681 (N.D. Cal. 2020)...................................................28

*Sec. & Exch. Comm'n v. Jarkesy,*
603 U.S. 109 (2024).................................... 1-6, 7, 9, 11, 13-23, 25-28, 31-32

*Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs.*,
791 F.3d 436, 444 (4th Cir. 2015)..............................................................29

*Tull v. U.S.*,
481 U.S. 412, 418-19 (1987) .....................................................................16

*United States v. Sagoo*,
No. 4:24-CV-01159, 2025 WL 2689912 ...................................5-6, 20-22, 23

*Vaping Dragon LLC v. U.S. Food & Drug Admin.*,
No. 1:25-CV-081-H, 2026 WL 266277 (N.D. Tex. Feb. 2, 2026),
*appeal docketed*, No. 26-10292 (5th Cir. Apr. 3, 2026).......13, 16, 23, 27, 34

*Walker v. Brooks Pub. Safety LLC*,
707 F. Supp. 3d 590, 601 (W.D. Va. 2023)..................................................30

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7, 20 (2008) ...............................................................................13

*Wulferic, LLC v. U.S. Food and Drug Admin.*,
793 F.Supp.3d 830, 847, 850-51 (N.D. Tex. 2025) ................................ 16-17

*Z St. v. Koskinen*,
791 F.3d 24, 29 (D.C. Cir. 2015) ..........................................................12

**Statutes**

5 U.S.C. § 704 ..........................................................................................25

26 U.S.C. § 6663 ...................................................2, 13-14, 16-18, 20, 21, 23, 27

26 U.S.C. § 7421(a) ................................................................... 1-2, 7-9, 11

26 U.S.C. § 7454(a) ...............................................................................18

28 U.S.C. § 1292(a)(1)........................................................................ 1-2

28 U.S.C. § 1331 .......................................................................................1

28 U.S.C. § 1391 .....................................................................................29

31 U.S.C. § 5314(a) ...............................................................................21

## JURISDICTIONAL STATEMENT

This is an interlocutory appeal from an Order of the United States District Court for the District of South Carolina entered on May 5, 2026, denying Plaintiffs-Appellants' Expedited Motion for Preliminary Injunction and concluding that granting the requested relief would violate the Anti-Injunction Act, 26 U.S.C. § 7421(a). (JA153.) Plaintiffs-Appellants' Expedited Motion for Preliminary Injunction (JA056), which the District Court's Order denied, sought to enjoin Defendants-Appellees the Internal Revenue Service ("IRS"), United States Department of the Treasury ("DOT"), and the United States of America ("United States") (collectively, "Appellees" or "Government") from pursuing the unconstitutional Notices of Deficiency (Letter 531 (Rev. 9-2022)) (collectively, "Unconstitutional Notices") (JA038, JA188) that assert fraud claims against Plaintiffs-Appellants but do not provide them access to their constitutional right to a jury trial as mandated by the Seventh Amendment to the United States Constitution, *Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109 (2024), and *Jarkesy*'s progeny. The District Court had original jurisdiction pursuant to 28 U.S.C. § 1331.

Plaintiffs-Appellants Feingold Morgan Sanchez LLC ("FMS"), Feingold LLC ("FLLC"), and David Feingold ("Feingold") (collectively, "Appellants") filed a timely Notice of Appeal on June 4, 2026. (JA200). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(a)(1). Appellants appeal the District Court's

ruling denying the preliminary injunction requested by Appellants seeking to enjoin the Government from pursuing the Unconstitutional Notices. Under 28 U.S.C. § 1292(a)(1), interlocutory orders denying an injunction are immediately appealable. *See, e.g.*, *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011).

## STATEMENT OF ISSUES

1. Did the District Court err in concluding that granting the relief requested by Appellants in their Expedited Motion for Preliminary Injunction, which sought to enjoin the Government from pursuing the Unconstitutional Notices, would violate the Anti-Injunction Act, 26 U.S.C. § 7421(a)?

2. Did the District Court err in denying Appellants' Expedited Motion for Preliminary Injunction that sought to enjoin the Government from pursuing the Unconstitutional Notices?

## STATEMENT OF CASE

This case arises from the IRS's unconstitutional and unlawful retaliatory campaign against Appellants. (JA006-008, JA009-022; JA154-157, JA160-172.) Appellants contend *Jarkesy* makes clear that the Government has violated Appellants' Seventh Amendment right by refusing to offer a jury trial to Appellants in an action for fraud under I.R.C. § 6663. Appellants further assert that the Anti-Injunction Act does not bar their requested preliminary injunction because Appellants do not seek to restrain the assessment or collection of any tax or penalty

but instead contest only the legality of the Unconstitutional Notices, namely the failure to provide for access to a jury trial as mandated by *Jarkesy*. Appellants are entitled to a jury trial on the Government's allegations of fraud, and the Government must be enjoined from pursuing the Unconstitutional Notices it issued to Appellants.

## I. Supreme Court's *Jarkesy* Decision.

On June 27, 2024, the United States Supreme Court determined that the Government cannot seek a fraud penalty without access to a jury trial. *See Jarkesy*, 603 U.S. at 140. In *Jarkesy*, the Supreme Court held that the Securities and Exchange Commission ("SEC") violated the Seventh Amendment by imposing fraud penalties through an internal, administrative enforcement action. *See id*. at 120-21. The Supreme Court reiterated that a party "facing a fraud suit has the right to be tried by a jury of his peers before a neutral adjudicator." *Id.* at 140. *Jarkesy* held that when the SEC sought civil penalties against a defendant for securities fraud, the Seventh Amendment entitled the defendant to a jury trial before a penalty could be imposed. *See id.* at 110. Stated another way, in June 2024, the Supreme Court affirmed the sacrosanct place that civil juries hold by recalling that "every encroachment upon [civil jury trials] has been watched with great jealousy.'" *Id*. at 122 (citation and internal quotation marks omitted).

At issue in *Jarkesy* was the SEC's practice of levying civil penalties in securities fraud adjudications through in-house proceedings, rather than seeking

such awards in federal court. *See id*. at 115-18. The Supreme Court deemed this practice inconsistent with the Seventh Amendment. *See id.* at 139-41. *Jarkesy* explained the Seventh Amendment guarantees the right to a jury trial whenever an agency seeks civil penalties or pursues common law actions. *See id.* at 127-28, 139-41. The Supreme Court in *Jarkesy* found a close relationship between federal securities fraud and common law fraud and concluded that the basic conduct targeted was the same for each—misrepresenting or concealing material facts. *Id*. at 125. Like *Jarkesy*, the alleged fraud at issue here targets the same basic conduct as common law fraud.

While the SEC exclusively used in-house hearings to seek civil penalties, and such method of adjudication was business as usual in securities litigation for a long time, *Jarkesy* makes clear that the bottom line is this: When the civil penalty sounds in fraud, the Seventh Amendment requires a jury to determine whether the Government has proven the fraud allegations. *See id*. at 140. Concurring with the six-justice majority, Justice Gorsuch emphasized "that other constitutional provisions reinforce the correctness of the Court's course," and that taken with Article III and the Due Process Clause of the Fifth Amendment, the Seventh Amendment "limit[s] how the government may go about depriving an individual of life, liberty, *or property*." *Id.* at 141 (emphasis added). The premise is as simple as it is structurally critical: when the Government seeks to penalize somebody by taking

their property *for fraud*, that somebody is constitutionally entitled to have a jury make that decision.

Moreover, recently, in *Sagoo*, ***the Government conceded***, in the wake of *Jarkesy*, that a plaintiff was entitled to a civil jury trial on federal tax penalties. *See United States v. Sagoo*, No. 4:24-CV-01159, 2025 WL 2689912, at *3 (N.D. Tex. Sept. 19, 2025) ("Following the Supreme Court's recent decision in *SEC v. Jarkesy*, the Government concedes that Ms. Sagoo is entitled to a Seventh Amendment civil jury trial."). Like Ms. Sagoo, Appellants here are entitled to a jury trial on the alleged fraud penalties.

## II. The Government's Unconstitutional Notices to Appellants.

Despite the Supreme Court's determination in *Jarkesy* that the Government cannot seek a fraud penalty without access to a jury trial, on September 12, 2024, well after the Supreme Court decided *Jarkesy*, the Government issued Unconstitutional Notices to Appellants. (JA038, JA188.) These Unconstitutional Notices assert **<u>fraud</u>** claims against Appellants but do not provide Appellants access to their constitutional right to a jury trial. Indeed, the Unconstitutional Notices only provide as follows if a taxpayer disagrees:

> **If you disagree with the Notice of Deficiency**
> If you want to contest our final determination, you have 90 days from the date of this letter (150 days if addressed to you outside of the United Staes) to file a petition with the United States Tax Court.

(JA038, JA188.) A jury trial is not an option in United States Tax Court. Worse, *after* the Unconstitutional Notices were issued, the Government conceded that *Jarkesy* applies to federal tax penalties. *See Sagoo*, 2025 WL 2689912, at *3. Still, the Government has refused to withdraw the Unconstitutional Notices issued to Appellants.

After receiving the Unconstitutional Notices, Appellants, out of an abundance of caution, exercised the unconstitutionally limited option afforded by the Unconstitutional Notices and filed petitions in the United States Tax Court without access to a jury trial ("Tax Court Cases"). In response, the Government has aggressively litigated the Tax Court Cases. This should not be happening. To be clear, the specific Tax Court Cases that Appellants were forced to commence would not have been initiated if the Unconstitutional Notices simply complied with the Constitution and *Jarkesy* in the first place by affording Appellants the jury trial to which they are entitled.

On February 4, 2026, Appellants filed their Complaint against the IRS, DOT, and the United States (JA006, JA154)[1] requesting the District Court to declare as unlawful, set aside, and enjoin the enforcement of the Unconstitutional Notices that the Government issued to Appellants.

---

[1] Appellants filed their Amended Complaint on May 22, 2026. (JA154.)

Appellants are being irreparably harmed. Injunctive relief is, therefore, necessary to prevent the Government from violating the Seventh Amendment, flouting the Supreme Court's authority, and inflicting further unnecessary and irreparable harm on Appellants. On March 25, 2026, Appellants filed their Expedited Motion for Preliminary Injunction ("Motion") seeking to enjoin the Government from pursuing the Unconstitutional Notices. On May 5, 2026, the District Court entered its Order (JA153) denying Appellants' Motion and concluding that granting Appellants' requested relief would violate the Anti-Injunction Act, 26 U.S.C. § 7421(a). Specifically, the Order stated, "TEXT ORDER denying [9] Plaintiffs' motion for preliminary injunction. For the reasons set forth in pages 5 through 8 of the United States' response [Doc. [10] at 5-8], the Court concludes that granting the requested relief would violate the Anti-Injunction Act." (JA153.)

On June 4, 2026, Appellants timely filed their Notice of Appeal appealing to this Court from the District Court's Order denying Appellants' requested injunction (JA200), and this interlocutory appeal followed.

## SUMMARY OF ARGUMENT

Appellants seek to enjoin the Government from subverting Appellants' Seventh Amendment right to a jury trial to which Appellants are entitled in an action for fraud as reaffirmed by the Supreme Court in *Jarkesy*. Appellants contend the District Court erred in concluding that granting the relief requested by Appellants in

their Expedited Motion for Preliminary Injunction would violate the Anti-Injunction Act because Appellants do not seek to restrain the assessment or collection of any tax or penalty but instead contest only the legality of the Unconstitutional Notices. Further, Appellants assert that the District Court erred in denying Appellants' Expedited Motion for Preliminary Injunction that sought to enjoin the Government from pursuing the Unconstitutional Notices because Appellants have shown they satisfy the standard for obtaining a preliminary injunction.

## STANDARD OF REVIEW

In reviewing the denial of a preliminary injunction, this Court "assess[es] legal conclusions de novo." *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (citing *Dewhurst*, 649 F.3d at 290).

## ARGUMENT

For the reasons discussed below, granting the preliminary injunction requested by Appellants would not violate the Anti-Injunction Act, Appellants are entitled to their requested relief, and the Government must be enjoined from pursuing the Unconstitutional Notices.

### I. The District Court erred in concluding that granting the relief requested by Appellants in their Expedited Motion for Preliminary Injunction, which sought to enjoin the Government from pursuing the Unconstitutional Notices, would violate the Anti-Injunction Act, 26 U.S.C. § 7421(a).

In denying the preliminary injunction requested by Appellants, the District Court's Text Order found, "For the reasons set forth in pages 5 through 8 of the

United States' response [Doc. [10] at 5-8], the Court concludes that granting the requested relief would violate the Anti-Injunction Act." (JA153.) The Anti-Injunction Act ("AIA") does not, however, bar the preliminary injunction requested by Appellants here.

The AIA provides, in pertinent part, that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person . . . ." 26 U.S.C. § 7421(a). Thus, the key question is whether Appellants' requested injunction is "for the purpose of restraining the assessment or collection of any tax." *Id*. It is not. Contrary to the Government's contention, Appellants do **<u>not</u>** seek to restrain the assessment or collection of taxes. In reality, Appellants only assert that the face of the Unconstitutional Notices violates their Seventh Amendment right to a jury trial under *Jarkesy* because it asserts fraud penalties against Appellants without providing Appellants access to a jury trial. Appellants have been clear: "This action does not seek to restrain the assessment or collection of any tax or penalty. It contests the legality of the Unconstitutional Notices, namely the failure to provide for access to a jury trial as mandated by *Jarkesy*." (JA023, JA174.)

To be clear, Appellants seek only to ensure that the Government comply with Appellants' Seventh Amendment rights by providing access to a jury trial in order to contest the alleged fraud penalty. *In this case*, Appellants do not contest the *amount* of tax or penalty allegedly owed to the United States. *In this case*, Appellants only

contest the Unconstitutional Notices' failure to provide Appellants access to a jury trial.

In *CIC Services, LLC v. IRS*, the United States Supreme Court determined that the AIA did *not* bar a suit challenging an IRS notice. 593 U.S. 209, 223 (2021). The Supreme Court's reasoning in *CIC Services* applies to this case. "In considering a 'suit['s] purpose,' we inquire not into a taxpayer's subjective motive, but into the action's objective aim—essentially, the relief the suit requests." *Id*. at 217 (citation omitted). "[T]hat aim is not best assessed by probing an individual taxpayer's innermost reasons for suing." *Id.* at 218. "Instead, this Court has looked to the face of the taxpayer's complaint" and "the claims brought and injuries alleged—to determine the suit's object." *Id.* "And most especially, we have looked to the 'relief requested'—the thing sought to be enjoined." *Id.* Here, the face of Appellants' pleading could not be clearer:

> **PRAYER FOR RELIEF**
>
> WHEREFORE, Plaintiffs respectfully request that this Court provide the following relief:
>
> 1. Enter judgment declaring the Unconstitutional Notices unlawful and setting the Unconstitutional Notices aside.
>
> 2. Permanently enjoin the enforcement of the Unconstitutional Notices.

(JA031-032; JA184.)

In the *CIC Services* case, the taxpayer's complaint "describes the relief requested as 'setting aside IRS Notice 2016–66,' 'enjoin[ing] the enforcement of Notice 2016–66 as an unlawful IRS rule,' and 'declaring that Notice 2016–66 is unlawful.'" 593 U.S. at 218 (citation omitted). In other words, the complaint in *CIC Services* contested "the legality of an [IRS Notice]." *Id.* at 219. Here, Appellants do too.

*CIC Services* explicitly stated, "Once again, the Anti-Injunction Act provides . . . that 'no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person.' § 7421(a). If [a taxpayer's] suit is not for that purpose, it can go forward." *Id.* at 216. Here, Appellants are not seeking to prohibit or restrain the assessment or collection of taxes or penalties. Rather, Appellants contest the legality of the Unconstitutional Notices which do not provide for Appellants' constitutional right to a jury trial, as mandated by *Jarkesy*. *CIC Services* allows for this case to go forward.

What is particularly disturbing about the Government's argument here is that it knows better. In the case *Norcave Properties LLC v. IRS*, No. 2:25-CV-00398, 2025 WL 2463809 (W.D. La. Aug. 25, 2025), *appeal docketed*, No. 25-30542 (5th Cir. Sep. 26, 2025) that the Government has cited to in this case (JA081), the Government prevailed against a taxpayer under the AIA because, as the Government

noted in that case, that taxpayer's complaint requested the Court to "[e]njoin the IRS from pursuing any penalties against Norcave . . . ." (JA127.) In *Norcave*, however, the Government acknowledged the truth: (1) if a taxpayer's complaint alleges that an IRS notice is flawed and (2) no legal claim is brought against a statutory tax or penalty, the taxpayer's complaint can go forward. (JA126-127.)

At bottom, the Government asks this Court to look at this suit's potential downstream impact on the IRS's collection of a tax or penalty rather than its objective aim. The Supreme Court made it clear the Government's request is improper. Here, like *CIC Services*, Appellants' suit "targets the [Unconstitutional Notices], not the downstream tax. And because that is the suit's aim, the Anti-Injunction Act imposes no bar." *CIC Services*, 593 U.S. at 223.

When pealed back, the Government's overarching position essentially is that no challenge to its actions is outside of its taxing authority. This is not correct. *See, e.g.*, *Z St. v. Koskinen*, 791 F.3d 24, 29 (D.C. Cir. 2015) (citing *Cohen v. United States*, 650 F.3d 717 (D.C.Cir.2011) ("In so ruling, we rejected the IRS's view of 'a world in which no challenge to its actions is ever outside the closed loop of its taxing authority.'")).

For the foregoing reasons, the District Court erred in concluding that granting the preliminary injunction requested by Appellants would violate the AIA, and

Appellants are entitled to a preliminary injunction enjoining the Government from pursuing the Unconstitutional Notices.

## II. The District Court erred in denying Appellants' Expedited Motion for Preliminary Injunction that sought to enjoin the Government from pursuing the Unconstitutional Notices.

As discussed above, the AIA does not bar the preliminary injunction requested by Appellants. Further, the District Court erred in denying the requested injunction because Appellants have shown they are entitled to their requested relief.

To obtain a preliminary injunction, Appellants must establish: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 339 (4th Cir. 2021). Appellants easily satisfy this standard.

### *A. Appellants Are Likely To Succeed On The Merits.*

The Government contends that the ***fraud penalty*** under I.R.C. § 6663 does not trigger the right to a jury trial. The Government's position is untenable. Appellants are entitled to a jury trial on the Government's allegations of fraud.

#### *a.* Jarkesy *provides that the Government's refusal to provide a jury trial for fraud claims against Appellants is unconstitutional.*

Whether the Government's fraud penalty scheme here triggers the right to a jury trial requires a two-step analysis. *See Vaping Dragon LLC v. U.S. Food & Drug*

*Admin.*, No. 1:25-CV-081-H, 2026 WL 266277, at *13 (N.D. Tex. Feb. 2, 2026), *appeal docketed*, No. 26-10292 (5th Cir. Apr. 3, 2026) "The threshold issue is whether this action implicates the Seventh Amendment." *Jarkesy*, 603 U.S. at 120. If yes, then the Court must "consider whether the 'public rights' exception to Article III jurisdiction applies." *Id.* Only if the action implicates public rights may Congress "assign [it] to an agency tribunal without a jury, consistent with the Seventh Amendment." *Id.* at 119. Applying *Jarkesy*, the Government's civil fraud penalty scheme under § 6663 undoubtedly implicates the Seventh Amendment, and no public rights are involved. Thus, the Government must notify a taxpayer of a civil fraud penalty in a manner consistent with the Constitution and *Jarkesy*. The Government did not do so here.

1. <u>The Government's Unconstitutional Notices implicate and violate the Seventh Amendment</u>.

The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." U.S. Const. Amend. VII. In construing this language, the Supreme Court noted that the right is not limited to the common law forms of action recognized when the Seventh Amendment was ratified. *See Jarkesy*, 603 U.S. at 122. To the contrary, the Framers used the term "common law" in the Seventh Amendment "in contradistinction to equity, and admiralty, and maritime jurisprudence," in which around the time of the Revolution, "the English began

evading American juries by siphoning adjudications to juryless … courts." *Id.* at 121-22.[2] The Seventh Amendment therefore "embrace[s] all suits which are not of equity or admiralty jurisdiction . . . ." *Jarkesy*, 603 U.S. at 122 (citation and internal quotation marks omitted).

"The Seventh Amendment extends to a particular statutory claim if the claim is 'legal in nature.'" *Id.* (citation omitted). The nature of the remedy is the most important consideration in determining whether a suit is legal in nature. *See id.* at 122-23. Civil penalties are a form of monetary relief. *See id.* at 123. "While monetary relief can be legal or equitable, money damages are the prototypical common law remedy." *Id.* "What determines whether a monetary remedy is legal is if it is designed to punish or deter the wrongdoer, or, on the other hand, *solely* to 'restore the status quo.'" *Id.* (emphasis added) (citation omitted). If the analysis does not turn on "restoring the status quo," the civil penalty is designed to be punitive. *Id.* at 124. The Supreme Court has therefore recognized that "civil penalt[ies are] a type of

---

[2] As it "has been often said by" the Supreme Court, "the trial by jury is a fundamental guaranty of the rights and liberties of the people." *Hodges v. Easton*, 106 U.S. 408, 412 (1882). It is "'of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right' has always been and 'should be scrutinized with the utmost care.'" *Jarkesy*, 603 U.S. at 121 (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)).

remedy at common law that could only be enforced in courts of law." *Id.* at 123 (citation and internal quotation marks omitted).[3]

The penalty at issue here, I.R.C. § 6663, states, in pertinent part, as follows:

> **(a) Imposition of penalty**
> If any part of any underpayment of tax required to be shown on a return is due to ***fraud***, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud.
>
> **(b) Determination of portion attributable to *fraud***
> If the Secretary establishes that any portion of an underpayment is attributable to ***fraud***, the entire underpayment shall be treated as attributable to fraud, except with respect to any portion of the underpayment which the taxpayer establishes (by a preponderance of the evidence) is not attributable to ***fraud***.

26 U.S.C. § 6663 (emphasis added). The fraud penalty under § 6663 is designed to punish, and not *solely* to "restore the status quo," because the fraud penalty is collected *in addition to* the alleged tax deficiency. *See* 26 U.S.C. § 6663. Therefore, this civil penalty is a type of penalty at common law which implicates the Seventh Amendment. *See Jarkesy*, 603 U.S. at 123; *see also Vaping Dragon*, 2026 WL 266277, at *14-18 (noting that under *Jarkesy*, civil money penalties are a textbook legal remedy, holding that the FDA's civil money penalty scheme is indistinguishable from the fraud penalty in *Jarkesy*, and rejecting the FDA's public

---

[3] *See also Tull v. U.S.*, 481 U.S. 412, 418-19 (1987) (explaining that "[a]ctions by the Government to recover civil penalties under statutory provisions . . . historically had been viewed as [a] type of action in debt requiring trial by jury").

rights exception argument; therefore, finding that the party had a Seventh Amendment right to a jury trial to challenge the FDA penalty); *Wulferic, LLC v. U.S. Food and Drug Admin.*, 793 F.Supp.3d 830, 847, 850-51 (N.D. Tex. 2025) (holding that the FDCA's civil money penalty provision for tobacco products violates the Seventh Amendment; reasoning that the penalty provision was analogous to the penalty provision in *Jarkesy*).

Moreover, as the Supreme Court held in *Jarkesy*, the very use by Congress of the word "fraud" itself in specific legislation incorporates common law fraud into that specific law, creating an enduring link between them. *See* 603 U.S. at 125. This makes sense. Indeed, § 6663(a), "Imposition of *penalty*," states, in pertinent part: "If any part of any underpayment of tax required to be shown on a return is due to *fraud*, there shall be added to the tax amount equal to 75 percent of the portion of the underpayment which is attributable to *fraud*." *See* 26 U.S.C. § 6663(a) (emphasis added).[4] The "fraud" being punished in § 6663(a) targets the same basic conduct as in common law fraud; that is, allegedly misrepresenting or concealing material facts.[5] By Congress's use of the word "fraud" in § 6663, the meaning of common

[4] § 6663(a)'s heading specifically uses the word *penalty*, strongly implying punishment. *See Jarkesy*, 603 U.S. at 124.

[5] Courts have held that the term "fraud" used in the statutory provisions authorizing the assessment of civil fraud penalties against taxpayers, including § 6663, "means intentional wrongdoing on the part of a taxpayer motivated by a specific purpose to evade a tax known or believed to be owing." *Gagliardi v. United States*, 81 Fed. Cl.

law fraud was incorporated into § 6663 and an enduring link was created between "fraud" as used in § 6663 and its common law "ancestor." *Jarkesy*, 603 U.S. at 125. The close relationship described above confirms that an action for a fraud penalty under § 6663 is likewise "legal in nature." *Id*. at 125-26.[6]

*Jarkesy* concluded, in no uncertain terms, that, "a defendant facing a fraud suit has the right to be tried by a jury of his peers before a neutral adjudicator." *Id.* at 140. Appellants are facing exactly that. By refusing to offer a jury trial to Appellants in an action for fraud, the Government has violated Appellants' Seventh Amendment right.[7]

---

772, 777, *dismissed*, 315 F. App'x 247 (Fed. Cir. 2008). Further, courts look at objective indicia often referred to as "badges of fraud" in their analysis of the civil fraud penalties against taxpayers. *Id*. at 778 (citing *Morse v. Comm'r,* 419 F.3d 829, 832 (8th Cir. 2005) (identifying objective indicia from which fraud can be inferred as "badges of fraud")).

[6] Even the burden of proof signals that the fraud penalty assessment is common law in nature. Indeed, the Government must prove fraud under the civil penalties statutory scheme by "clear and convincing evidence," a classic common law burden for causes of action for common law fraud. *Compare N. Donald LA Prop., LLC v. Comm'r of Internal Revenue*, T.C.M. (RIA) 2026-019 (T.C. 2026) (citing § 7454(a) and Rule 142(b) and noting commissioner must prove fraud by clear and convincing evidence) *with Osborn v. Univ. Med. Assocs. of Med. Univ. of S.C.*, 278 F. Supp. 2d 720, 732 (D.S.C. 2003) (noting that fraud cannot be presumed and "must be proved by clear, cogent, and convincing evidence").

[7] *See also Nat'l Lab. Rels. Bd. v. Starbucks Corp.,* 159 F.4th 455, 474 (6th Cir. 2025) (describing *Jarkesy* as holding that "the Seventh Amendment guarantees the right to a jury trial whenever an agency seeks civil penalties or pursues common law actions").

2. <u>The public rights exception does not apply</u>.

*Jarkesy* compels finding that the public rights exception also does not apply in this case. The public rights exception allows Congress "to assign certain matters to agencies for adjudication even though such proceedings would not afford the right to a jury trial." *Jarkesy*, 603 U.S. at 120. But the exception only applies to "distinctive areas involving governmental prerogatives" in which a matter can be resolved without a jury. *Id.* Application of the public rights exception must be closely scrutinized. *See id*. at 131.

If a matter concerns private rights (as here), the matter must be adjudicated in an Article III court. *See id*. at 127. "If a suit is in the nature of an action at common law, then the matter presumptively concerns private rights, and adjudication by an Article III court is mandatory." *Id*. at 128. "[E]ven with respect to matters that arguably fall within the scope of the 'public rights' doctrine, the presumption is in favor of Article III courts." *Id.* at 132 (citations and internal quotation marks omitted).[8]

[8] *Jarkesy* further noted that "the public rights exception is, after all, an *exception*," and that it "has no textual basis in the Constitution." *Id.* at 131 (emphasis in original). It further rejected the dissent, which "extrapolate[d] from the outcomes in cases concerning unrelated applications of the public rights exception and from one opinion, *Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n*, 430 U.S. 442, 97 S. Ct. 1261, 51 L.Ed.2d 464 (1977)." *Id*. at 131 n.2.

Here, the public rights exception does not apply to the Government's civil fraud penalty scheme under § 6663. First, such a position would be inconsistent with the Government's position in *Sagoo,* 2025 WL 2689912, at *3. Moreover, because the SEC's claims in *Jarkesy* were "modeled on common law fraud" and provided "a type of remedy available only in law courts," the public rights exception did not apply. 603 U.S. at 136. The same is true here.[9] Separate and apart from the underlying *taxes* (which may involve a public right), ***this case*** is solely about ***substantial penalties against a human being and two private entities***, which, of course, involve private rights. The issue here is whether the Government can obtain penalties against Appellants for fraud without access to a jury trial and, more acutely, whether the vehicle through which they are attempting to do so, the Unconstitutional Notices without access to a jury trial, is constitutional. Given the fraud penalties at issue, it "is a common law suit in all but name[,]" *id*. at 136, and, therefore, the public rights exception will not apply to deprive Appellants of their constitutional rights.

*b.* Jarkesy*'s progeny supports Appellants' position that they are entitled to a jury trial on the Government's allegations of fraud.*

*Sagoo* is materially analogous to this case and calls for the relief Appellants seek. *See* 2025 WL 2689912. In *Sagoo*, ***the Government conceded*** that following

[9] *Jarkesy* also rejected the argument that the presence of the United States as a proper party to the proceeding is sufficient to trigger the exception. *Id*. at 135. Instead, "what matters is the substance of the suit, not where it is brought, who brings it, or how it is labeled." *Id.*

*Jarkesy*, that Ms. Sagoo was entitled to a civil jury trial on federal tax penalties. *See id*. at *3 ("Following the Supreme Court's recent decision in *SEC v. Jarkesy*, the Government concedes that Ms. Sagoo is entitled to a Seventh Amendment civil jury trial."). That is, the Government did not dispute that the Seventh Amendment is implicated when the IRS seeks "FBAR penalties," or civil penalties for willful failure to comply with the reporting requirements described in 31 U.S.C. § 5314(a). *Id.* at *1, 3. The Government also did not argue that the public-rights exception applied. *See id.* at *3.

As the Government correctly represented in *Sagoo*, the "FBAR penalties" were like the penalties in *Jarkesy*, and that, therefore, under *Jarkesy*, Ms. Sagoo was entitled to a jury trial. *Id.* And the Government should have conceded these points in this case especially because the § 6663 fraud penalty is more like the fraud penalty in *Jarkesy* than the FBAR penalties in *Sagoo*. Indeed, the statute at issue in *Sagoo* does not include the word "fraud." The statute at issue here, however, includes the word "fraud" multiple times as noted above.

In *Sagoo*, the disputed issue was whether the defendant had a right to a jury trial *before* the penalties were assessed or whether a trial de novo *after* assessment was sufficient to protect her rights. *See id*. at *3. That is the issue in this case too; namely, whether Appellants have an immediate Seventh Amendment right to a jury trial to contest the § 6663 fraud penalty, and whether the two purported "avenues"

that the Government has provided them—a *juryless* Tax Court proceeding or a post-payment refund suit—are unconstitutional and inadequate. The court in *Sagoo* agreed those "avenues" are unconstitutional and inadequate. *Sagoo*, 2025 WL 2689912, at *3-4.

Specifically, the *Sagoo* court found that, like here, an after-the-fact trial does not protect an individual's Seventh Amendment right because the agency already adjudicated liability without the benefit of a neutral adjudicator. *See id*. at *3 (citing *Jarkesy*, 603 U.S. at 133; *Dimick*, 293 U.S. at 486 ("Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence.")). Second, an after-the-fact trial does not protect an individual's Seventh Amendment right because the adjudication and civil penalties come with "real world impacts," including the threat to either pay the penalty or get sued *before* a jury could determine if that individual was even liable to the United States for any amount of money. *Id.* at *4. Critically, third, the court in *Sagoo* found that an after-the-fact trial does not protect an individual's Seventh Amendment right when the after-the-fact trial is the only opportunity for the individual to exercise her Seventh Amendment right. *See id.* That would be the case here if the Government prevailed—Appellants' only opportunity to challenge the Government's unconstitutional actions *in front of a jury* would be in a post-payment refund suit.

Moreover, just earlier this year the District Court for the Northern District of Texas held that if a particular non-judicial forum, *i.e.*, an administrative tribunal, cannot constitutionally resolve an action to impose a civil money penalty, "then the proceeding is illegitimate, thereby causing the here-and-now injury of subjection to an unconstitutionally structured decision-making process." *Vaping Dragon*, 2026 WL 266277, at *9 (citation and internal quotation marks omitted). Analyzing the FDA's civil money penalty scheme, the court in *Vaping Dragon* underwent the *Jarkesy* analysis and ultimately held that such scheme "implicates the Seventh Amendment because it provides a quintessential legal remedy." *Id*. at *18. Thus, that court found Vaping Dragon LLC was entitled to a jury trial in an Article III court. *See id*. Like *Vaping Dragon*, the failure of the Unconstitutional Notices here to offer a jury trial in an "attempt to funnel [this] suit elsewhere—say, a juryless [Tax Court]—[] run[s] afoul of the Constitution." *Id*. at *9.

This case is solely about the Government's Unconstitutional Notices—of substantial penalties modeled on common law fraud against a human being and two *private* entities, *i.e.*, Appellants—that do not provide Appellants access to their constitutional right to a jury trial. Consistent with *Jarkesy* and its progeny *Sagoo* and *Vaping Dragon*, the Government cannot seek the fraud penalty under § 6663 against Appellants without providing them access to a jury trial.

*c. Appellants did not waive their Seventh Amendment right to a jury trial by filing in the only forum the Government provided to them.*

The Government's position is that Appellants waived their constitutional right to a jury trial by exercising the unconstitutionally limited option afforded by the Government in the Unconstitutional Notices and filing petitions in the United States Tax Court without access to a jury trial. (JA083-086.) The Unconstitutional Notices, however, provide no alternative to Tax Court and only provide as follows if a taxpayer disagrees:

> **If you disagree with the Notice of Deficiency**
> If you want to contest our final determination, you have 90 days from the date of this letter (150 days if addressed to you outside of the United Staes) to file a petition with the United States Tax Court.

(JA038, JA188.) There is no waiver here.

The Supreme Court has established that because "the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver." *Aetna Ins. Co. v. Kennedy to Use of Bogash*, 301 U.S. 389, 393 (1937). "A jury trial waiver must be 'knowing and voluntary.'" *Little v. Gray Media Grp., Inc.*, 717 F.Supp.3d 1058, 1061 (D. Kan. 2024) (citation omitted). Moreover, under the unconstitutional conditions doctrine, the United States may not effectively deny constitutional rights by making it too costly to exercise them. *See FCC v. AT&T, Inc.*, 146 S. Ct. 1418, 1431 (2026). "The unconstitutional conditions doctrine 'vindicates the

Constitution's enumerated rights by preventing the government from coercing people into giving them up.'" *Id*. (citation omitted).

Here, Appellants were only given two inadequate choices to contest the alleged tax deficiency and fraud penalty in the Unconstitutional Notices. On the one hand, they could file in *juryless* Tax Court in violation of their constitutional right to a jury trial, *see Jarkesy*, 603 U.S. at 120-121, but they had to file within ninety (90) days or they would lose their right to challenge the deficiency and fraud penalty in Tax Court. (JA038, JA188.) On the other hand, they could pay the penalties, wait at least six (6) months, and then finally challenge the constitutionality of the IRS actions in a post-payment refund suit. (JA084.) This "choice" between two options—one of which is unconstitutional and the other of which is inadequate (as explained below)[10]—cannot constitute a knowing and voluntary waiver. This lack of true choice runs afoul of the unconstitutional conditions doctrine, because forcing Appellants to either contest the alleged penalty deficiency in a *juryless* Tax Court in violation of their Seventh Amendment rights or to pay the penalties, wait at least six (6) months, and then file to vindicate their constitutional rights and for a refund

---

[10] For these same reasons, the Unconstitutional Notices are reviewable under the Administrative Procedure Act ("APA"). The APA provides for judicial review of final agency action for which there is no other adequate remedy in a court. *See* 5 U.S.C. § 704. Because these two "options" are inadequate, there are no other avenues for Appellants to obtain relief.

"effectively den[ies] constitutional rights by making it too costly to exercise them." *AT&T, Inc.*, 146 S. Ct. at 1431.

1. The "option" of a *juryless* Tax Court is unconstitutional.

The Tax Court proceeding—*without a jury trial*—is an inadequate choice because, as discussed in detail above, it unconstitutionally deprives Appellants of their Seventh Amendment right to a jury trial. *See Jarkesy,* 603 U.S. at 120-21. Moreover, under *Axon Enterprise, Inc. v. Fed. Trade Comm'n*, being subjected to unconstitutional proceedings in Tax Court before being able to challenge the proceedings creates a here-and-now injury that cannot be remedied after unconstitutional proceeding takes place. *See* 598 U.S. 175, 192 (2023). The *Axon* court explained that citizens have a right not to undergo unconstitutional proceedings against them, and therefore they do not have an adequate remedy if they cannot assert their constitutional rights until after the proceedings are over. *See id*. at 191-92. This is because a "proceeding that has already happened cannot be undone." *Id.* at 191.

This case is analogous to *Axon* because here, Appellants are also "challenging the [Government's] power to proceed at all." *Id*. at 192. And like in *Axon*, challenging the constitutionality of the *juryless* Tax Court proceeding does not relate *at all* to the subject matter of the tax case; that is, the amount of tax and penalty, if any, owed by Appellants. *See id.* Instead, Appellants only challenge the constitutionality of the proceeding itself. *See id.* Appellants do this to avoid the here-

and-now injury of being subjected to unconstitutional proceedings in the juryless Tax Court. *See id.*, at 192; *see also Vaping Dragon LLC*, 2026 WL 266277, at *9 (holding that if a particular non-judicial forum, *i.e.*, an administrative tribunal, cannot constitutionally resolve an action to impose a civil money penalty, "then that proceeding is 'illegitimate,' thereby causing the 'here-and-now injury of subjection to an unconstitutionally structured decision-making process'" (citation omitted)). Because litigating in the *juryless* Tax Court violates Appellants' Seventh Amendment rights under *Jarkesy*, the Tax Court proceeding is "illegitimate" and is not an adequate remedy. *Id.*[11]

2. <u>The "option" of a post-payment refund suit is an inadequate remedy</u>.

A post-payment refund suit is also not an adequate remedy where, as here, Appellants challenge only the legality of the Unconstitutional Notices as opposed to alleged tax deficiencies and penalties. *See Amador v. Mnuchin*, 476 F.Supp.3d 125, 143 (D. Md. 2020). In *Amador*, the court found that requiring plaintiffs to seek judicial relief though a tax refund action would "erect unnecessarily onerous and

[11] *Vaping Dragon* reiterates that if the Seventh Amendment entitles a party to a jury trial, then the party is also entitled to adjudication in an Article III court. *See id.* at *12. "Or said another way, if [a party] prevails on [its] Seventh Amendment claim, the agency adjudication cannot proceed." *Id.* Here, Appellants are entitled to a jury trial under the Seventh Amendment to litigate allegations of fraud against them under § 6663; therefore, "agency adjudication cannot proceed," and agency adjudication in a *juryless* Tax Court is not an adequate remedy.

costly barriers to plaintiffs' suit." *Id.* at 144. Like in *Amador*, Appellants would need to file a timely administrative claim with the IRS, and the IRS must first deny the claim or fail to act within six months before Appellants could even challenge the constitutionality of the IRS's procedures. *See id.* Accordingly, like in *Amador*, a post-payment refund suit here would not be adequate to challenge the unconstitutional actions of the IRS because the process would also be "arduous, expensive, and long." *Id.* at 143 (citation and internal quotation marks omitted).

Like in *Amador*, Appellants here do not seek to challenge the alleged tax deficiency and penalty in this suit; rather, they only seek to obtain a jury trial to do so, which is their constitutional right under *Jarkesy*. Because Appellants' challenge is not to the amount, if any, of the tax penalty, but rather, to the constitutional legitimacy of the Unconstitutional Notices, a post-payment refund suit is not an adequate remedy. *See Axon*, 598 U.S. at 192 (noting that the plaintiff was "challenging the [United States'] power to proceed at all"); *see also Scholl v. Mnuchin*, 494 F.Supp.3d 661, 681 (N.D. Cal. 2020) ("To summarize, plaintiffs *are challenging an agency action*, not seeking a tax refund. For that reason, an adequate remedy is not available by filing a tax refund suit." (emphasis added)).

*d. Venue is proper in South Carolina.*

As a basis for arguing that Appellants cannot demonstrate a likelihood of success on the merits of their claims, the Government contends venue is not proper

in South Carolina. As an initial matter, the Government points to no supporting authority that choice of *venue* goes towards the *merits* of Appellants' claims. (JA081-083.) In addition, the Government failed to move for dismissal based on improper venue pursuant to Rule 12(b)(3), FRCP, as required, and the time to do so has passed. These reasons alone defeat the Government's venue argument here.

In any event, venue is proper in South Carolina. Even if the Government had filed a motion to dismiss for improper venue (it did not), such motion would fail. To survive a motion to dismiss for improper venue, Appellants need only make a prima facie showing of venue, and in determining whether events or omissions are sufficiently substantial to support venue under 28 U.S.C. § 1391, "a court should not focus only on those matters that are in dispute or that directly led to the filing of the action . . . [r]ather, it should review 'the entire sequence of events underlying the claim.'" *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) (citations omitted).

In addition, Appellants' choice of venue is generally given *great* deference and should rarely be disturbed. *See Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs.*, 791 F.3d 436, 444 (4th Cir. 2015) (quoting *Bd. Of Trs. v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 2007)) (explaining that generally "a plaintiff's 'choice of venue is entitled to substantial weight [when] determining if transfer is appropriate'"); *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984) (explaining that unless the other factors weigh *strongly* in favor of

the defendant, the court should rarely disturb plaintiff's choice of forum); *Green v. Smith*, No. 7:23-cv-03088-JDA, 2023 WL 5960354, at *3 (D.S.C. Sept. 13, 2023) (Austin, Mag. J.) (stating "[a]s a general rule, a plaintiff's choice of venue is entitled to ***substantial weight*** in determining whether transfer is appropriate." (emphasis added) (citation and internal quotation marks omitted)).

A substantial part of the events giving rise to this action occurred in South Carolina. "A 'substantial part' does not necessarily mean that a majority of the events must have taken place in the given district, and the chosen venue need not be the 'best venue.'" *Walker v. Brooks Pub. Safety LLC*, 707 F. Supp. 3d 590, 601 (W.D. Va. 2023) (citation omitted). This is not a close call. Appellant Feingold is the CEO of Broadstreet Inc. and an owner of Contender America. (JA135.) Both companies are based in Greenville County, South Carolina. (JA135;JA159.) Appellant Feingold is involved in approximately 40 real estate deals in the Upstate of South Carolina and transactions comprising more than $3 billion. (JA136; JA159.) In excess of $5 billion in total transactions have been performed out of offices in Greenville, South Carolina by Broadstreet, Inc. and its affiliated entities, including, but not limited, Broadstreet Global Holdings, LLC and Broadstreet Global Management, LLC (collectively, "Broadstreet"). (JA135-136; JA159.) Appellant Feingold is also an ultimate owner of an office building located 211 N. Main St., Greenville, South Carolina 29601. (JA135; JA159.) In addition, the Government references

Broadstreet throughout in its recently filed proposed amended pleading in the Tax Court cases. (JA138; JA159.) The Government has also issued subpoenas to two people associated with Broadstreet that reside in this District. (JA147; JA159.) Appellants specifically allege that the IRS' misconduct detailed herein has directly affected Appellants' operations, a substantial part of which are based in this District. (JA009; JA159.) Venue is also proper in South Carolina under § 1391(e)(1) because Appellant FMS is a Florida corporation with its principal place of business in Greenville, South Carolina. (JA008; JA157; JA150.)

*e. There is a constitutional right to a jury trial in suits against the sovereign.*

The Government also asserts that there is no constitutional right to a jury trial in suits against the sovereign. (JA089-090.) The Government argues that "the Seventh Amendment right to a trial by jury does not apply in actions against the Federal Government," citing to *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) for support. (JA090.) The Government's assertion, however, is not good law under *Jarkesy*. 603 U.S. at 122. Specifically, *Lehman* relied on *Galloway v. United States*, 319 U.S. 372, 387-89 (1943), which stated that: "[i]t can hardly be maintained that under the common law in 1791 jury trial was a matter of right for persons asserting claims against the sovereign. Whatever force the [Seventh] Amendment has therefore is derived because Congress in the legislation cited, has made it applicable."

*Jarkesy*, however, was decided in 2024—over forty (40) years after *Lehman* and over eighty (80) years after *Galloway*—where the Supreme Court articulated the modern understanding of the scope of the Seventh Amendment. *Jarkesy*, 603 U.S. at 122. The Supreme Court noted that, contrary to *Lehman*, in construing the language of the Seventh Amendment, the right to trial by jury is not limited to the common-law forms of action recognized when the Seventh Amendment was ratified. *See id.* Instead, the Seventh Amendment "embrace[s] *all* suits which are not of equity or admiralty jurisdiction." *Id.* at 122 (emphasis added). *Jarkesy*'s plain language establishes that the Government is constitutionally required to provide access to a jury trial where, as here, the Seventh Amendment is implicated and the public rights exception does not apply.

Further, for purposes of the Seventh Amendment, *Jarkesy* emphasized that "what matters is the *substance* of the suit, not where it is brought, who brings it, or how it is labeled." *Id*. at 135 (emphasis added). "[T]he right to a jury should not turn on how the parties happen to be brought into court," and the right instead "depends on the nature of the issue to be tried rather than the character of the overall action." *Ross v. Bernhard*, 396 U.S. 531, 538, 541 n.15 (1970). Here, the Government cannot plausibly dispute that the "substance" of this suit concerns the *Government's own* attempt to impose fraud penalties on Appellants, even if the Government happens to be captioned as Defendants/Appellees. Thus, the substance of this action is entirely

different and distinguishable from the cases the Government cites (JA090), which involved a private party's voluntary suit against the sovereign, not the Government's affirmative imposition of penalties like those Appellants face here. *See, e.g.*, *Lehman*, 453 U.S. at 158 (age discrimination suit against the Navy); *Galloway*, 319 U.S. at 372 (suit for disability benefits); *McElrath v. United States*, 102 U.S. 426 (1880) (suit for compensation). Since the Government's imposition of fraud penalties "involves rights and remedies of the sort traditionally enforced in an action at law," *Pernell v. Southall Realty*, 416 U.S. 363, 375 (1974), the Seventh Amendment secures the right to a jury trial.

### *B. Appellants Will Suffer And Have Suffered Irreparable Harm.*

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 217 (D.D.C. 2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Indeed, the Supreme Court has recognized that a plaintiff's "subjection to an unconstitutionally structured decision[-]making process" is a "here-and-now" injury that cannot be undone after that decision-making process takes place. *Axon*, 598 U.S. at 192; *cf. Burgess v. Fed. Deposit Ins. Corp.*, 639 F. Supp. 3d 732, 749 (N.D. Tex. 2022), *rev'd and remanded on other grounds sub nom. Burgess v. Whang*, 152 F.4th 579 (5th Cir. 2025) ("Since the Court has determined that Plaintiff was entitled under the Seventh Amendment to a jury trial, the irreparable injury requirement is automatically

satisfied without the need to consider Plaintiff's particular showings of irreparable harm.").

The irreparable harm here is clear. The Unconstitutional Notices have subjected Appellants "'to an illegitimate proceeding, led by an illegitimate decisionmaker.'" *Vaping Dragon*, 2026 WL 266277, at *10 (quoting *Axon,* 598 U.S. at 191). The Government is aggressively pursuing the illegitimate proceedings against Appellants. This "'unquestionably constitutes irreparable injury.'" *C.G.B.*, 464 F. Supp. 3d at 217 (quoting *Elrod*, 427 U.S. at 373).

***C. The Remaining Factors Warrant Injunctive Relief.***

When the Government is the defendant, the balance of equity and public interest factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). In other words, "where the government is a party to the suit, the harm to defendants and the public interest merge and 'are one and the same, because the government's interest is the public's interest.'" *Costa v. Bazron*, 456 F. Supp. 3d 126, 137 (D.D.C. 2020) (quoting *Pursuing America's Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016)).

Common sense and established law mandate "that the Government cannot suffer harm from an injunction that merely ends an unlawful practice." *C.G.B.*, 464 F. Supp. 3d at 218 (citation and internal quotation marks omitted). It is "'always in the public interest to prevent the violation of a party's constitutional rights.'" *Costa*,

456 F. Supp. 3d at 137 (quoting *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 105 (D.D.C. 2012)). When, as here, Appellants establish "a likelihood that" a defendant's action "violates the U.S. Constitution," they, in turn, "also establish[] that both the public interest and the balance of the equities favor a preliminary injunction." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014).

In light of the foregoing, the District Court erred in denying Appellants' Expedited Motion for Preliminary Injunction, and Appellants are entitled to a preliminary injunction enjoining the Government from pursuing the Unconstitutional Notices.

## CONCLUSION

For the foregoing reasons, Appellants respectfully request that this Court reverse the District Court's denial of preliminary injunction and remand with instructions that Appellants be granted a preliminary injunction enjoining the Government from pursuing the Unconstitutional Notices pending a final judgment in this matter.

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument.

Respectfully Submitted,

GALLIVAN, WHITE & BOYD, P.A.

By: /s/ Ioannis (Ian) G. Conits
John T. Lay, Jr.
1201 Main Street, Suite 1200 (29201)
Post Office Box 7368
Columbia, South Carolina 29202
(803) 779-1833
jlay@gwblawfirm.com

Ioannis (Ian) G. Conits
55 Beattie Place, Suite 1200
Post Office Box 10589
Greenville, South Carolina 29201
(864) 271-9580
iconits@gwblawfirm.com

Lindsay A. Joyner
40 Calhoun Street, Suite 315 (29401)
Post Office Box 22768
Charleston, South Carolina 29413
(803) 799-1833
ljoyner@gwblawfirm.com

*Counsel for Appellants Feingold Morgan Sanchez LLC, Feingold LLC, and David Feingold*

August 3, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2026, I electronically filed the foregoing **Opening Brief of Appellants** with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Douglas C. Rennie
US DEPARTMENT OF JUSTICE
Washington, DC 20044
Email: douglas.c.rennie@usdoj.gov

*s/ Ioannis (Ian) G. Conits*

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

**No.** 26-1724 **Caption:** Feingold Morgan Sanchez, LLC, et al. v. IRS, et al.

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2) & 40(d)(3).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6). Sans-serif type, such as Arial, may not be used except in captions and headings.

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

☑ this brief or other document contains 8,495 [*state number of*] words

☐ this brief uses monospaced type and contains ______ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

☑ this brief or other document has been prepared in a proportionally spaced typeface using Microsoft Word [*identify word processing program*] in 14-point Times New Roman [*identify font, size, and type style*];

**or**

☐ this brief or other document has been prepared in a monospaced typeface using ______ [*identify word processing program*] in ______ [*identify font, size, and type style*].

**NOTE: The Court's preferred typefaces are Times New Roman, Century Schoolbook, and Georgia. The Court discourages the use of Garamond.**

(s) Ioannis (Ian) G. Conits

Party Name Appellants Date: 08/03/2026

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

# DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-1724 Caption: Feingold Morgan Sanchez LLC, et al. v. IRS, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Feingold LLC
(name of party/amicus)

who is Appellant, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Ioannis (Ian) G. Conits Date: 6/22/2026

Counsel for: Appellant Feingold LLC



Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-1724 Caption: Feingold Morgan Sanchez LLC, et al. v. IRS, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Feingold Morgan Sanchez LLC
(name of party/amicus)

who is Appellant, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐ YES ☑ NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Ioannis (Ian) G. Conits Date: 6/22/2026

Counsel for: Appellant Feingold Morgan Sanchez LLC



Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-1724 Caption: Feingold Morgan Sanchez LLC, et al. v. IRS, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

David Feingold
(name of party/amicus)

who is Appellant, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Ioannis (Ian) G. Conits Date: 6/22/2026

Counsel for: Appellant David Feingold



Print to PDF for Filing